### SEGLER v. COWARD.

1. A question of jurisdiction may be raised at any time.
2. A Circuit Judge has jurisdiction at chambers to hear and determine a motion to vacate a warrant of seizure issued by the clerk of court to enforce an agricultural lien.
3. An affidavit to obtain a warrant to enforce an agricultural lien is fatally defective where it contains no statement that defendant is about to dispose of his crop, or has done, or is about to do, any act which would defeat the lien; also, where it fails to state the amount due.
4. In determining whether the clerk was justified in issuing his warrant upon the affidavit submitted to him, the judge cannot consider facts stated in an affidavit made at the hearing before the judge.
5. The remedy given to the lienor by section 2404 of the General Statutes is not exclusive of other remedies; where a warrant of seizure has been unlawfully issued, a motion to vacate may be made.
6. An agricultural lien for rent, with a printed provision for advances erased, contained a covenant that the lienor should return all the cotton seed used by him, and gave to the lienee, in printed words, a lien for rent and advances—*held*, that the lien did not cover the cotton seed, which was to be returned in kind.

Before Hudson, J., Aiken, October, 1884.

The opinion states the case.

*Messrs. Croft & Dunlap, O. C. Jordan*, for appellant.

*Messrs. Henderson Bros.*, contra.

January 5, 1886.   The opinion of the court was delivered by
Mr. Justice McIver.   On the 30th day of April, 1884, plaintiff and defendant executed an agreement, styled an "agricultural lease and lien," prepared on a printed form, whereby

plaintiff agreed to lease to the defendant a certain tract of land until December 31, 1884. Immediately following that part of the agreement which provided for the lease, were the following printed words, which were erased before the paper was signed, to wit: "And said lessor agrees to make advances to the lessee during the current year, in money or supplies, to be used and expended in the cultivation of such soil; the said advances not to exceed in all the sum of          dollars." The agreement then proceeds as follows: "And the lessee, on his part, agrees to pay to the lessor, as rent for the same, ten bales of good lint cotton, averaging in weight four hundred and fifty pounds, and to return all the cotton seed used by him, with ten bushels per hundred additional, which shall become due and payable on or before the 1st and 15th days of October, A. D. 1884, at ——." And then follows the following words in print: "And it is agreed that, to secure payment of said rent, and the repayment of said advances, the lessor shall have an agricultural lien on the crop produced on said land during the year, and all the remedies to enforce the same as provided by law."

The ten bales of cotton, as rent, seems to have been paid, and there is no controversy as to that; but a dispute having arisen as to the cotton seed to be returned, the plaintiff, on the fifteenth day of October, A. D. 1884, made an affidavit before the clerk that the defendant was indebted to him "for twelve hundred bushels of cotton seed advanced by the said G. P. Segler to the said G. G. Coward for agricultural purposes for the year 1884;" that "to secure said cotton seed," said Coward executed to said Segler an agricultural lien on his crop in accordance with the provisions of "an act to secure landlords and persons making advances," and that said Coward "refuses to pay said cotton seed with intent to defeat said lien." Upon this affidavit the clerk issued his warrant to the sheriff, requiring him "to seize the said crop, and, after due notice, sell the same for cash, and pay over the net proceeds thereof, or so much thereof as may be necessary to pay for twelve hundred bushels of cotton seed, to G. P. Segler, or order, together with the costs of these proceedings." Under this warrant the sheriff, on October 16, 1884, seized and took into his possession 250 bushels of corn, more or less, and 300

bushels of cotton seed, more or less, of the crop of the defendant.

Thereupon the defendant, on October 21, 1884, gave notice that he would move before his honor, Judge Hudson, at chambers, for an order "vacating the warrant of seizure herein, and requiring the release of the property taken thereunder by the sheriff." At the hearing before Judge Hudson the plaintiff submitted additional affidavits, wherein, amongst other things, it was stated "that the said defendant, before the issuing of the warrant herein, was about to defeat the lien herein by making way with and by selling the crops covered by said lien, and by refusing to pay the plaintiff. That there was due the plaintiff at the time of issuing said lien twelve hundred bushels of cotton seed, worth the sum of two hundred and forty dollars." The judge, after hearing argument, granted an order "that the warrant of seizure herein made by the clerk of the court for Aiken County, of date October 21, 1884, be vacated and set aside, and that the levy made by the sheriff of said county be released," assigning as his reasons for so doing: "1st. The affidavit is fatally defective, in that it does not show that any steps by the tenant have been taken to defeat the lien. Simple refusal to pay does not impair nor defeat a lien. 2d. The contract of lease contains no clause setting forth such an agreement as constitutes the prerequisite to the special statutory lien. A mere promise to return cotton seed in kind is not such an agreement for advances as will support or create the statutory lien for advances. Persons expecting the benefits of the statute must comply with its requirements."

From this order the plaintiff appeals, substantially, on four grounds: 1st. Because his honor erred in holding that the original affidavit upon which the warrant was issued was fatally defective. 2d. Because, even if the original affidavit was fatally defective, yet the defects were supplied by the plaintiff's supplementary affidavit offered at the hearing, and his honor erred in not so holding. 3d. Because of error in holding that "the contract of lease contains no clause setting forth such an agreement as constitutes the prerequisite to the special statutory lien." 4th. Because his honor was without jurisdiction to hear this motion at chambers.

We will first consider the fourth ground of appeal. This ground does not appear to have been taken in the court below, and ordinarily it could not, for this reason, be considered here. But as it presents a question of jurisdiction, which may be raised at any time, we will proceed to its consideration. Section 402 of the Code of Procedure provides that "motions may be made to a judge or justice out of court, except for a new trial on the merits ;" and as this was clearly not a motion for a new trial on the merits, we think that the statute, in terms, authorized it to be heard at chambers.

As to the first ground of appeal, we agree with the. Circuit Judge that the original affidavit was fatally defective in that it contained no statement to the effect that the defendant was about to sell or dispose of his crop, or that he had done, or was about to do, anything else which would defeat the lien. A simple statement that the defendant refused to pay what the plaintiff alleged to be due was certainly not sufficient. The statute never was designed to operate as an expeditious mode of collecting money, but its manifest purpose was to prevent the lienor from taking any steps to defeat the lien provided for, by placing the property beyond the reach of the lien. The warrant was not intended as a substitute for an ordinary execution, and hence until it is shown by affidavit that the lien is about to be defeated by the removal or disposition of the property, the lienee must, like all other creditors, pursue the ordinary means for enforcing payment of his debt, and cannot avail himself of the very stringent and summary remedy provided by the act.

We think also that the affidavit was fatally defective in not stating the amount due under the alleged lien. This the act expressly requires. and very properly requires, for without a statement of the amount then due, the sheriff would have no means of ascertaining how much property it would be necessary for him to seize or how much to sell. The original affidavit only stated that Coward was indebted to Segler for twelve hundred bushels of cotton seed, without any statement whatever as to their value, and in the absence of such statement who was to determine the amount that the sheriff was required to collect ?

As to the second ground of appeal, we do not see how the sup-

plementary affidavit submitted by the plaintiff at the hearing could supply the defects in the original affidavit. The question before the judge was whether the warrant was lawfully issued, and as the act only makes it lawful for the clerk to issue the warrant when it shall be proved by affidavit to his satisfaction, "that the person to whom such advances have been made is about to sell or dispose of his crop, or in any other way is about to defeat the lien hereinbefore provided for, accompanied with a statement of the amount then due," if he undertakes to issue such warrant without the affidavit required, his act in so doing is clearly unlawful, and it cannot be rendered lawful by any subsequent showing which in this case was not made to the clerk, but to the judge who was called upon to determine the lawfulness of the act of the clerk in issuing the warrant.

The argument that the remedy provided by section 2404 of the General Statutes is exclusive of all other remedies cannot be maintained. That section only purports to provide a mode by which the lienor may regain possession of his crop after it has been seized, and applies as well to a lawful as to an unlawful seizure, and does not purport to afford the means of setting aside a warrant unlawfully issued.

But what is perfectly conclusive to our minds is that we do not think that there was any lien given or intended to be given for anything but the rent, and that the agreement to return the cotton seed used was an independent covenant, for the breach of which an ordinary action would lie, but which could not be enforced under the provisions of the lien law. The agreement of the parties being in writing, its proper construction and intent must be determined by the terms used. The very fact that the printed words in the form used, which contained an agreement on the part of the lessor to make advances to the lessee in money or supplies, to be used in the cultivation of the land leased, were erased, is conclusive to our minds that the parties did not intend that any advances were to be made or secured by any lien ; and the fact that in a subsequent part of the agreement the printed words are found, "that to secure the payment of said rent, *and the repayment of said advances,* the lessor shall have an agricultural lien," &c., is not inconsistent with such conclusion, for the

words which we have italicised in the last preceding quotation were manifestly intended only to be effective where the preceding covenant to advance constituted part of the agreement. This is evident not only from the use of the words, "*said advances*," but also from the whole frame-work of the instrument. So that where, as in this case, the preceding covenant to advance has been erased, the subsequent words above italicised become wholly ineffective. It is difficult to conceive why the parties should have deliberately erased the words providing for advances to be made by the plaintiff to the defendant, unless it was their intention that no such advances were to be made. And when to this is added the fact that the claim now made for advances is only for the cotton seed, which the agreement provided should be returned *in kind*, we cannot resist the conclusion that the effort now made to bring this claim under the provisions of the lien law is altogether an afterthought, and that no such purpose was in the contemplation of the parties when the agreement was executed.

The judgment of this court is that the order appealed from be affirmed.